NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WILLIAM C. KING,**
*Claimant-Appellant*

**v.**

**ROBERT WILKIE, ACTING SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2018-1326

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 16-3189.

---

Decided: May 7, 2018

---

WILLIAM C. KING, Providence, RI, pro se.

MARIANA TERESA ACEVEDO, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., MARTIN F. HOCKEY, JR.; Y. KEN LEE, BRANDON A. JONAS, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before O'MALLEY, LINN, and HUGHES, *Circuit Judges.*

PER CURIAM.

Appellant William C. King, proceeding *pro se*, appeals a decision of the U.S. Court of Appeals for Veterans Claims ("Veterans Court") affirming the decision of the Board of Veterans' Appeals ("Board") denying his requests for a hearing and for compensation for certain claimed medical conditions under 38 U.S.C. § 1151. *See King v. Shulkin*, No. 16-3189 (Vet. App. Oct. 31, 2017). Because King does not challenge either the validity of the Veterans Court's decision on a rule of law or the validity or interpretation of a statute or regulation relied upon by the Veteran's Court in making its decision, 38 U.S.C. § 7292(a), we *dismiss* his appeal as falling outside our limited jurisdiction.

## BACKGROUND

King served on active duty in the U.S. Army from March 19, 1979 to July 12, 1982. Between August 11 and 17, 2010, King received in-patient treatment for lower abdominal pain at a Veterans Affairs ("VA") facility in Rhode Island. Treatment notes show that King, after reporting such pain to his primary care doctor, underwent a computed tomography ("CT") scan of his abdomen and pelvis, which revealed a mass in the right lower quadrant, as well as thickened irregular walls with standing fat outside a portion of the bowel. The CT scan also revealed some enlargement of the left adrenal gland, irregularities of the bladder, and enlargement of the prostate. Based on the results of this scan, King's primary care doctor referred him to the emergency department for additional evaluation, and King was subsequently admitted for in-patient treatment with a differential diagnosis of diverticulitis, appendicitis, or malignancy. King received intravenous antibiotics and was restricted to a clear diet.

Additional treatment records show that, after King received this prescribed treatment, his pain and other symptoms began to resolve. On August 16, 2010, he underwent a second CT scan of his abdomen and pelvis, which revealed a marked interval decrease to bowel wall thickening in the ascending colon, suggesting resolving diverticulitis. King was discharged on August 18, 2010 in stable condition. The VA's records provide no indication that King suffers from any additional disability as a result of his August in-patient treatment, nor do they indicate that he has ever been diagnosed with cancer, HIV, a kidney disorder, or Cushing's Syndrome. The records do document, however, King's "long standing history of hypochondriasis" and his negative HIV test results.

On November 1, 2011, King filed a claim for compensation under 38 U.S.C. § 1151 for diverticulitis he contends resulted from the VA's treatment. *King*, slip op. In 2012, he added the following residuals to his claim: (1) radiation poisoning; (2) HIV; (3) an adrenal adenoma; (4) Cushing's Syndrome; and (5) a kidney disorder. *Id.* King asserted that these conditions were caused by radiation he received from the two CT scans and by unnecessary intravenous antibiotics that he received against his objections. The Providence, Rhode Island Department of Veterans Affairs Regional Office obtained a medical opinion that King did not develop diverticulitis or any of the other conditions as a result of the treatment he received, and denied King's claim based on that opinion. *Id.*

King then appealed to the Board and elected to have a hearing in Washington, D.C. *Id.* He did not appear at the May 19, 2015 hearing, however, notwithstanding that the VA had sent him notice of the hearing's date, time, and location. *King*, slip op. at 2. Almost one year later, King explained that he mistakenly chose Washington as the hearing location instead of Providence, Rhode Island, and asked for a new hearing. *Id.* He subsequently stated that

his claim did not require a hearing and that he wanted his claim to be decided. The Board construed King's statement as a withdrawal of his request for a Board hearing, and further determined that, even if he had not withdrawn his request, he had failed to present good cause for rescheduling the hearing in light of the fact that notice of the hearing had been provided and the fact that King did not attempt to contact the Board.

The Board proceeded to deny King's claim on the merits, finding that he "does not have additional disability that resulted from an event not reasonably foreseeable or any carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA resulting from his in-patient treatment for diverticulitis." J.A. 4. It relied on the testimony of the VA physician who treated King, who explained that King received a total radiation dose from the CT scans that fell below an international standard limit, and opined that King (1) did not develop diverticulitis from the treatment received; (2) "did not have radiation poisoning"; (3) "did not develop an adrenal adenoma as a result of the radiation poisoning"; and (4) "did not have a diagnosis of Cushing's Syndrome." J.A. 8–9.

King appealed to the Veterans Court, which affirmed the Board's denial. *King*, slip op. at 1. First, it concluded that the Board did not clearly err in denying King's request for a new hearing, observing that the Board found that King was properly notified of his hearing date, did not request to reschedule the hearing, and did not show good cause for why he missed the hearing and why those circumstances prevented a request for postponement. *Id.* at 2. Turning to King's compensation claim-related arguments, the Veterans Court pointed out that he did not allege any specific error in the Board's decision, whether in its factual findings or analysis, but instead disagreed with the denial of his claim. *Id.* at 3. It then summarized the evidence presented below, acknowledged

the Board's finding that King was not competent to diagnose his additional disability or to provide an opinion regarding the cause of that disability, and concluded that King "failed to demonstrate any clear error in the Board's decision to deny him compensation under section 1151." *Id.* at 4. King timely appealed that decision to this court.

## DISCUSSION

"This court's jurisdiction to review decisions by the Veterans Court is limited." *Wanless v. Shinseki*, 618 F.3d 1333, 1336 (Fed. Cir. 2010). The relevant statutory provision provides that, "[a]fter a decision of the United States Court of Appeals for Veterans Claims is entered in a case, any party to the case may obtain a review of the decision with respect to" either (1) "the validity of a decision of the Court on a rule of law"; or (2) "any statute or regulation (other than a refusal to review the schedule of ratings for disabilities adopted under section 1155 of this title) or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the decision." 38 U.S.C. § 7292(a); *see also id.* § 7292(d) (providing that this court "shall decide all relevant questions of law, including interpreting constitutional and statutory provisions"). In the absence of a constitutional issue, however, we may not "review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." *Id.* § 7292(d)(2).

The present appeal falls squarely within § 7292(d)(2)'s ambit. Broadly speaking, King argues that the Veterans Court erred by misrepresenting facts, failing to comprehend the circumstances surrounding his August 2010 hospitalization, and sanctioning the Board's denial of his request for a new hearing. In particular, with respect to his compensation claim, he submits that his primary care doctor overreacted to news that King was experiencing moderate stomach pain—which he believes was caused by

his eating okra—and thereafter "kidnapped" King by bringing him to the emergency room and subjected him to numerous unwanted CT scans and antibiotics. *Id.* at 2, 10. He also reiterates his belief that the CT scans caused radiation poisoning, which led to the complained of medical conditions, and further submits that he overdosed on the antibiotics that he was forced to take. *Id.* at 10. And he challenges the Board's conclusion that he did not present good cause to reschedule his hearing. *See id.* at 9.

King admits, however, that the Veterans Court did not decide any constitutional issues, *id.* at 1, and points to no statute, regulation, or other law on which he claims the Veterans Court erroneously relied. Moreover, he does not challenge the Veterans Court's interpretation of 38 U.S.C. § 1151, 38 C.F.R. § 20.702(d) (2017),[1] or any other statute or regulation. Instead, he claims that the court applied § 1151 to an incorrect set of facts and wrongly denied him a second hearing based on a limited view of the facts.[2] These challenges to the Board's factual find-

---

[1]  This regulation governs the scheduling and notice of hearings by the Board, and was the authority on which the Board in this case relied in denying King's request for a new hearing. *King*, slip op. at 2. The Board found, as a factual matter, that King was notified in March 2015 of his upcoming hearing in Washington, D.C. and that he did not contact the Board prior to missing the hearing. J.A. 3. It then considered the record and concluded that King did not establish good cause for his failure to report to the May 2015 hearing. J.A. 3. On appeal, King challenges only the Board's application of 38 C.F.R. § 20.702(d) to these facts.

[2]  On March 27, 2018, King filed an informal reply brief, seeking to clarify his version of events and pointing out several purported inaccuracies in the government's brief. *See* ECF No. 14. On April 24, 2018, he filed a

ings, credibility determinations, and weighing of the record evidence do not fall within our jurisdiction. *See Bastien v. Shinseki*, 599 F.3d 1301, 1306 (Fed. Cir. 2010) ("The evaluation and weighing of evidence and the drawing of appropriate inferences from it are factual determinations committed to the discretion of the fact-finder. We lack jurisdiction to review these determinations.").

CONCLUSION

For the foregoing reasons, King's appeal is

**DISMISSED**

COSTS

No costs.

---

motion seeking to supplement his reply brief with additional claimed factual material, which this court granted the following day. ECF Nos. 16, 17. Nothing in these briefs alters our conclusion that we lack jurisdiction to hear this appeal.